**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                   CR 07-0415 JB

JAVIER MARIN-ARREOLA,

    Defendant.

**AMENDED MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report, filed April 29, 2007 (Doc. 15)("Marin-Arreola's Objections"). The Court held a hearing on Defendant Javier Marin-Arreola's objections on May 24, 2007. The primary issues are: (i) whether the Court should treat Marin-Arreola's 1996 conviction for violation of the Georgia Controlled Substances Act as a "drug trafficking offense" and, in accordance with that finding, add twelve levels to his base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(B); and (ii) whether the Court should strike paragraph 5 of the Presentence Investigation Report ("PSR"). Because the Court believes that the documentation which it is permitted to consider does not support a finding that Marin-Arreola's 1996 conviction was for a drug trafficking offense, the Court will not enhance Marin-Arreola's offense level to the degree U.S.S.G. § 2L1.2(b)(1)(B) requires. Because the Court believes that it should not strike information that it has considered from the PSR, the Court will not

---

[1]The Court entered a Memorandum Opinion and Order overruling in part and sustaining in part Defendant Javier Marin-Arreola's objections to his Presentence Investigation Report on May 31, 2007, See Memorandum Opinion and Order, filed May 31, 2007 (Doc. 19)("May 31, 2007 Opinion). In the first sentence of the first full paragraph on page three of its May 31, 2007 Opinion, the Court incorrectly stated that "[t]he USPO incorporated the offense level to which the parties stipulated in calculating Marin-Arreola's guideline sentence." Id. at 3. At the July 6, 2007 sentencing hearing in this case, the Court informed the parties that it would enter an amended opinion to correct that statement. This opinion contains the Court's correction.

strike paragraph 5 from the PSR; the Court will, however, move paragraph 5 to a more appropriate section of the PSR.

## FACTUAL BACKGROUND

On June 20, 1996, Marin-Arreola pled guilty in Georgia state court to a felony violation of the Georgia Controlled Substances Act ("GCSA"). See Marin-Arreola's Objections ¶ 2, at 1; PSR ¶ 22, at 7-8. Paragraph 5 of the PSR that the United States Probation Office ("USPO") prepared indicates that Marin-Arreola was convicted for possession with intent to distribute cocaine in violation of Ga. Code Ann. §16-13-30(d). See PSR ¶ 5, at 3. The PSR does not indicate the source of this information, and neither the plea agreement nor the judgment form which the Georgia court entered in association with Marin-Arreola's conviction specifies the statutory section pursuant to which he was convicted. See Addendum to the Presentence Report at 1 (dated May 10, 2007)("Addendum"); Marin-Arreola's Objections, Exhibit 1, Georgia v. Marin, No. 96CR2074 (DeKalb County Sup. Ct. 1996), Judgment at 1 ("Judgment"). The plea agreement into which Marin-Arreola entered stated that the maximum sentence for his offense was thirty years. See Addendum at 1. Marin-Arreola was sentenced to six months incarceration in association with this conviction. See id.; PSR ¶ 22, at 7.

On June 6, 1997, Marin-Arreola was deported to Mexico. See PSR ¶ 5, at 3. On January 12, 2007, a United States Border Patrol Agent encountered Marin-Arreola, with seven other individuals, in a remote desert area near Deming, New Mexico. See id. ¶ 4, at 3. Marin-Arreola admitted that he was a Mexican national illegally present in the United States. See id.

## PROCEDURAL BACKGROUND

On March 6, 2007, the United States filed an Information charging Marin-Arreola with illegal re-entry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b). See Information, filed

March 6, 2007 (Doc. 11). On the same day, the United States and Marin-Arreola entered into a plea agreement, made pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which Marin-Arreola pled guilty to the charge contained in the Information. See Plea Agreement ¶ 3, at 2, filed March 6, 2007 (Doc. 10)("Plea Agreement").

In calculating Marin-Arreola's guideline sentence, the USPO assigned Marin-Arreola a base offense level of eight, see U.S.S.G. § 2L1.2(a), increased his offense level twelve levels because he had previously been deported after being convicted of a felony drug trafficking offense for which the sentence imposed was thirteen months or less, see U.S.S.G. § 2L1.2(b)(1)(B), and subtracted three levels for Marin-Arreola's acceptance of responsibility, see U.S.S.G. § 3E1.1. See PSR ¶¶ 10-17, at 4-5. Although the USPO calculated Marin-Arreola's adjusted offense level to be seventeen, it applied an adjusted offense level of fifteen pursuant to the plea agreement into which the parties entered. See PSR ¶ 18, at 5; Plea Agreement ¶ 4.e, at 3. An offense level of fifteen, combined with Marin-Arreola's criminal history category of III, results in a guideline sentencing range of twenty-four to thirty months.

Marin-Arreola filed his objections to the PSR on April 29, 2007. Marin-Arreola asserts that the GCSA prohibits conduct that is not included within the definition of "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(B). See Marin-Arreola's Objections ¶ 2, at 1. Marin-Arreola contends that, because the documents which the Court may consider do not indicate whether his 1996 conviction was for a drug trafficking offense, the Court should consider the conviction to be a regular felony, and the Court should enhance Marin-Arreola's base offense level by four levels, rather than twelve levels. See id. ¶ 2, at 1-2; U.S.S.G. § 2L1.2(b)(1)(D).

Marin-Arreola also objects to paragraph 5 of the PSR. He maintains that, although paragraph 5 is included in the section of the PSR entitled "Offense Conduct," the content of the paragraph does

-3-

not describe the conduct that constitutes his illegal re-entry offense. See Marin-Arreola's Objections ¶ 11, at 5. Marin-Arreola submits that paragraph 5 would be more appropriately located in the "Criminal History" section of the PSR. See id.

The USPO filed an Addendum to the PSR on May 10, 2007. In its Addendum, the USPO noted that, upon review of the GCSA, only Ga. Code Ann. § 16-13-30(d), which prohibits possession with intent to distribute a Schedule II substance (including cocaine), is punishable by up to thirty years imprisonment for a first offense. See Addendum at 1-2. The USPO also indicated that DeKalb County, Georgia Senior Assistant District Attorney Zena Gums confirmed that Marin-Arreola was convicted under Ga. Code Ann. § 16-13-30(d), because it is the only section of the GCSA "for which distribution of a Schedule II (cocaine) controlled substance is punishable by up to 30 years custody for a first time offense." Addendum at 2.

The USPO also emphasized that Marin-Arreola had previously been found guilty of illegal re-entry in federal court. See id. On June 23, 1999, Marin-Arreola was convicted of illegal re-entry in the United States District Court for the Southern District of Texas. See PSR ¶ 24, at 8-9. The USPO states that, in sentencing Marin-Arreola for his 1999 conviction, the federal district court in Texas applied the 1998 version of the Guidelines and added a sixteen-level enhancement to his base offense level because it considered his 1996 Georgia conviction an aggravated felony. See Addendum at 2. The USPO explained that, to consider Marin-Arreola's previous conviction an aggravated felony, the federal district court in Texas must have concluded that the conviction was pursuant to a statute that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense." Id. (quoting U.S.S.G. § 4B1.2(b) (1998)).

## LAW REGARDING ENHANCEMENTS FOR DRUG TRAFFICKING OFFENSES IN AN ILLEGAL RE-ENTRY CASE

The Sentencing Guidelines provide for a graduated series of offense-level enhancements that apply to defendants who are convicted of illegal re-entry after previously being convicted of another offense. See U.S.S.G. § 2L1.2(b). Pertinent to this case, the Court should enhance a defendant's base offense level by twelve levels if the defendant has previously been convicted of a drug trafficking offense for which the sentence imposed was thirteen months or less. See U.S.S.G. § 2L1.2(b)(1)(B). The Guidelines define a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv). When a defendant has previously been convicted of a felony not specifically enumerated in U.S.S.G. § 2L1.2(b), however, the Court should add four levels to the defendant's base offense level. See U.S.S.G. § 2L1.2(b)(D).

## SHEPARD v. UNITED STATES

In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court of the United States addressed the evidence that a sentencing court may consider to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, a crime which triggers a sentencing enhancement. The defendant in Shepard v. United States, Reginald Shepard, pled to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). See Shepard v. United States, 544 U.S. at 16. At sentencing, the United States referenced four burglary convictions to which Shepard had previously pled guilty under Massachusetts law and argued that, pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), which mandates a minimum fifteen-year sentence for

anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies, Shepard was subject to the statutory minimum fifteen-year sentence.  See Shepard v. United States, 544 U.S. at 16.

The Supreme Court in Shepard v. United States noted that, in its earlier decision in Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court had explained that "'burglary' as a predicate 'violent felony' (in the ACCA) [] refer[s] to what we called 'generic burglary,' an 'unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime.'"  Shepard v. United States, 544 U.S. at 16-17 (quoting Taylor v. United States, 495 U.S. at 599).  On the other hand, the Supreme Court in Shepard v. United States explained that some states' definitions of burglary encompass entries into boats and automobiles, convictions for which application of the ACCA and the corresponding sentencing enhancement would not be triggered. See 544 U.S. at 17.  In evaluating whether the burglaries to which Shepard pled guilty were "generic burglaries," or the latter, more expansive variety, the Supreme Court reasoned that "Taylor[ v. United States] is clear that any enquiry beyond statute and charging documents must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes."  Shepard v. United States, 544 U.S. at 23 n.4.

> We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

Id. at 26.  In reaching this conclusion, a majority of the Supreme Court observed that a less formalistic approach would cast doubt on the constitutionality of the ACCA, because it would implicate the protections of the Sixth and Fourteenth Amendments, i.e., "the Sixth and Fourteenth

Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." Id. See id. at 28 (Thomas, J., concurring in part and concurring in judgment)(holding that "permitting sentencing courts to look beyond charging papers, jury instructions, and plea agreements . . . would give rise to constitutional error").

Justice O'Connor authored a dissent in Shepard v. United States in which she asserted that she "would expand the list [of materials that a sentencing court may consider] to include any uncontradicted, internally consistent parts of the record from the earlier conviction." Id. at 31 (O'Connor, J., dissenting)(emphasis in original). With specific reference to police reports, Justice O'Connor acknowledged that "there may be some scenarios in which . . . a defendant's guilty plea is premised on substantially different facts than those that were the basis for the police investigation," but countered that, as a general proposition, "[t]he majority's rule, which forces the federal sentencing court to feign agnosticism about clearly knowable facts, cannot be squared with the ACCA's twin goals of incapacitating repeat violent offenders, and of doing so consistently notwithstanding the peculiarities of state law." Id. at 35 (O'Connor, J., dissenting)(emphasis in original). Justice O'Connor concluded that "[t]he Court's overscrupulous regard for formality leads it not only to an absurd result, but also to a result that Congress plainly hoped to avoid." Id. at 35-36 (O'Connor, J., dissenting).

## **ANALYSIS**

Marin-Arreola argues that the GCSA prohibits a broad range of conduct, some of which merits an enhancement under U.S.S.G. § 2L1.2(b)(1)(B) and some of which does not. See Marin-Arreola's Objections ¶ 2, at 1. He argues that, in determining whether his conviction for violation of the GCSA merits a sentencing enhancement, the Court is limited to review of the charging

documents, the judgment, the plea agreement, plea colloquy, and other findings of fact that he adopted in accordance with entering the plea. See id. ¶ 8, at 4. Marin-Arreola asserts that, because the documents which the Court is permitted to consider do not reveal whether his 1996 conviction was for a "drug trafficking offense," as that term is applied under U.S.S.G. § 2L1.2(b)(1)(B), the Court may not apply the twelve-level enhancement. See Transcript of Hearing at 6:13-17 (Johnson)(taken May 24, 2007)("Transcript").[2] Because the Court agrees that the evidence it may consider to determine whether Marin-Arreola's 1996 conviction was for a drug trafficking offense is limited, and because the Court concludes that the evidence it may consider in this case is insufficient to find Marin-Arreola's 1996 conviction was for a drug trafficking offense, the Court will not apply the twelve-level enhancement to his base offense level.

**I.     THE DOCUMENTARY EVIDENCE THAT THE COURT MAY CONSIDER DOES NOT REVEAL WHETHER MARIN-ARREOLA'S 1996 OFFENSE WAS A DRUG TRAFFICKING OFFENSE.**

The United States Court of Appeals for the Tenth Circuit has instructed that, "[w]hen the underlying statute reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy." United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (2005). Marin-Arreola argues that, in his case, these documents do not indicate whether the offense for which he was convicted in 1996 was a drug trafficking offense. The United States counters that a review of the entire GCSA confirms that the only offenses for which a defendant could be subject to a maximum sentence of thirty years are drug trafficking offenses. See Transcript at 8:1-7 (Brawley). The United States also maintains that the

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

USPO contacted an Assistant District Attorney in Georgia, who verified that Marin-Arreola's 1996 conviction would have been for a drug trafficking offense.

In United States v. Herrera-Roldan, 414 F.3d 1238 (2005), the Tenth Circuit considered the evidence that sentencing courts may consider when deciding whether the twelve-level enhancement under U.S.S.G. § 2L1.2(b)(1)(B) applies. The defendant in United States v. Herrera-Roldan had illegally re-entered the United States after having been convicted in Texas for possession of more than 50 pounds, but no more than 2000 pounds, of marijuana. See id. at 1239. The Tenth Circuit noted that, despite the quantity of marijuana the defendant had possessed, the Texas statute under which he was convicted prohibited mere possession, not possession "with intent to manufacture, import, export, distribute, or dispense." Id. at 1240 (quoting U.S.S.G. § 2L1.2 cmt. n.1(B)(iv)).

In ruling that the twelve-level enhancement did not apply, the Tenth Circuit in United States v. Herrera-Roldan rejected the United States' argument that the sentencing court should infer that the defendant's earlier conviction was for a drug trafficking offense based on the conduct underlying his conviction rather than focusing on the elements of the statute he violated. See 414 F.3d at 1241. The Tenth Circuit "decline[d] the government's invitation to draw inferences about an intent to distribute from [the defendant's] underlying conduct," and affirmed that "[t]he focus is not on the defendant's conduct, but on what state law prohibits." Id.

The Court notes that the only evidence that the parties have provided, and which the Court may consider, regarding Marin-Arreola's 1996 Georgia conviction is the Georgia court's judgment form and the USPO's representations regarding the plea agreement into which Marin-Arreola entered. Although the USPO maintains that the plea agreement states that the maximum sentence Marin-Arreola could face is thirty years, neither the plea agreement nor the judgment form indicates under what section of the GCSA Marin-Arreola was convicted. Accordingly, the Court concludes

that the evidence it is permitted to consider is insufficient to find that Marin-Arreola's previous conviction was for a drug trafficking offense.

In reaching this finding, the Court recognizes that it is employing a formalistic approach. The United States represents that, for a defendant to face a maximum penalty of thirty years under the GCSA, he must be convicted for a drug trafficking offense. Nevertheless, the Court believes that, if it were to expand the evidentiary record it considers in assessing the impact of Marin-Arreola's conviction, it would be adopting Justice O'Connor's dissenting position in Shepard v. United States, rather than the majority's holding. See Shepard v. United States, 544 U.S. at 35-36 (O'Connor, J., dissenting)(criticizing the majority's "overscrupulous regard for formality"). The Court believes that, consistent with Shepard v. United States and United States v. Herrera-Roldan, the evidence the Court is permitted to consider is not sufficient for the Court to find that Marin-Arreola's 1996 Georgia conviction was for a drug trafficking offense.

The Supreme Court's holding in Shepard v. United States allows the Court to look at the plea agreement. In this case, however, the plea agreement does not, alone, provide the answer and state the statute violated. The Court must look at the entire GCSA and draw an inference of what "must be" the correct statute. The holding in Shepard v. United States allows the Court to look at statutes, but the Supreme Court's task in that case was different; in Shepard v. United States, the statute of conviction was known, and the Supreme Court relatively easily turned to the statute and examined the elements. The task here is significantly different. In Marin-Arreola's case, the Court does not know or cannot read the state statute in the plea agreement, must make an assumption that some of the language in the plea agreement could only be referring to one statute, and then scour all Georgia's statutes for one that matches the description in the plea agreement.

While the Court is, in a strict sense, looking only at the plea agreement and the state

"statutes" -- permissible sources of information -- the Court's analysis is so different from that undertaken in Shepard v. United States that the Court concludes it violates both the spirit and the letter of the Supreme Court's majority opinion. The United States proposes the factfinding that the majority opinion in Shepard v. United States eschewed and that Justice O'Connor embraced. While the Court engages in such factfinding all the time, often in the context of sentencing, and is not at all reluctant to make logical deductions from the evidence, it was that sort of factfinding for which the majority refused to authorize trial judges. Whether because of Sixth Amendment concerns or otherwise, the majority in Shepard v. United States believed the trial court should take a formalistic approach. If the Supreme Court did not want trial judges to look at police reports to determine what "must have been," the Court is not convinced that it would want the trial judge to look at all the Georgia drug statutes, talk to state prosecutors, and review old presentence reports to decide what statute "must have been" violated. Moreover, while the majority in Shepard v. United States stated that the trial court could look at the "statutory definition" to determine the elements of the crime violated, 544 U.S. at 16, the majority did not say that the trial judge could look at all state "statutes" to determine what "statute" was violated. In the end, the Court believes the United States is asking the Court to look at evidence and perform analysis that the majority in Shepard v. United States did not want the Court to do.

     Nor does the sixteen-level enhancement that the United States District Court for the Southern District of Texas applied in calculating Marin-Arreola's sentence in association with his 1999 illegal re-entry conviction persuade the Court. As a preliminary matter, the decisions of other district courts do not bind the Court. More important, however, is that the Texas court made its decision in the context of a distinct jurisprudential context. The Texas court made its sentencing decision before the Supreme Court had decided Shepard v. United States and before the Tenth Circuit had

decided <u>United States v. Herrera-Roldan</u>.  Moreover, even if <u>United States v. Herrera-Roldan</u> had been decided, Tenth Circuit precedent is not binding on the district courts in the Southern District of Texas.  In any case, the Court will not vary its decision because a district court in another Circuit, analyzing a case within the context of different Supreme Court and appellate precedent, decided the matter another way.

Finally, in his written objections, Marin-Arreola also denies the applicability of U.S.S.G. § 2L1.2(b)(1)(C), a guideline section that mandates an eight-level enhancement when a defendant has previously been convicted of an "aggravated felony."  Marin-Arreola's Objections ¶ 10, at 5.  <u>See</u> U.S.S.G. § 2L1.2(b)(1)(C).  To determine whether Marin-Arreola's 1996 conviction was for an aggravated felony, the Court must evaluate: (i) whether the conviction was for a felony under Georgia law; and (ii) whether the offense is punishable under the federal Controlled Substances Act, 21 U.S.C. §§ 801 to 971 ("CSA").  <u>See</u> <u>United States v. Herrera-Roldan</u>, 414 F.3d at 1243.  The Georgia court's judgment form indicates that Marin-Arreola was convicted of a felony.  Without information about the specific statutory section under which he was convicted, however, the Court cannot decisively determine whether that felony is punishable under the CSA.  Consequently, for much the same reason that the Court cannot apply the twelve-level enhancement under U.S.S.G. § 2L1.2(b)(1)(B), the Court cannot find that Marin-Arreola's 1996 conviction was for an aggravated felony and will therefore not apply an eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C).

The Court concludes that Marin-Arreola's base offense level is eight pursuant to U.S.S.G. § 2L1.2(a). The Court will add four levels to Marin-Arreola's base offense level under U.S.S.G. § 2L1.2(b)(1)(D), and subtract two levels for Marin-Arreola's acceptance of responsibility, <u>see</u> U.S.S.G. § 3E1.1(a), to calculate an adjusted offense level of ten.  Under the fast-track plea agreement into which the parties entered, an offense level of ten entitles Marin-Arreola to a

reduction of one additional level.  See Plea Agreement ¶ 4.e, at 3.  An offense level of nine, combined with Marin-Arreola's criminal history category of III, results in a guideline sentencing range of eight to fourteen months.

## II.  THE COURT WILL MOVE PARAGRAPH 5 TO THE "CRIMINAL HISTORY" SECTION OF THE PSR.

Marin-Arreola maintains that, although paragraph 5 is included in the section of the PSR entitled "Offense Conduct," the content of the paragraph does not describe the conduct that constitutes his illegal re-entry offense.  See Marin-Arreola's Objections ¶ 11, at 5.  Marin-Arreola submits that paragraph 5, which describes his 1996 conviction in Georgia, would be more appropriately located in the "Criminal History" section of the PSR.  See id.

At the May 24, 2007 hearing on Marin-Arreola's objections, the Court advised the parties that, although it would not strike paragraph 5 from the PSR, it was inclined to move the contents of paragraph 5 to the end of paragraph 22; paragraph 22 describes Marin-Arreola's 1996 Georgia conviction.  Both Marin-Arreola and the United States indicated that this would be a suitable solution.  See Transcript at 11:6-9 (Brawley); 11:13-16 (Johnson).  Accordingly, the Court will sustain Marin-Arreola's objection to paragraph 5 in part and overrule it in part, and will move the contents of paragraph 5 to the end of paragraph 22.

**IT IS ORDERED** that the Defendant's Objections to the Pre-Sentence Report are sustained in part and overruled in part.  The Court will sustain Marin-Arreola's objection to a twelve-level enhancement to his base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(B).  The Court will move the contents of paragraph 5 of the PSR to the end of paragraph 22.

                                              _____
                                              UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
Norman Cairns
Kimberly A. Brawley
  Assistant United States Attorneys
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Erlinda O. Johnson
Albuquerque, New Mexico

        *Attorney for the Defendant*